IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH I. GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-0618 |
| | ) | |
| JO ANNE B. BARNHART, | ) | Judge McVerry |
| Commissioner of Social Security, | ) | Magistrate Judge Hay |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully submitted that the Motion for Summary Judgment [dkt. no. 6] filed by Plaintiff should be denied. It is further recommended that the Motion for Summary Judgment [dkt. no. 8] filed by the Defendant should be granted and that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits should be affirmed.

II. REPORT

**A.   Procedural History**

Plaintiff, Keith I. Griffin, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

In his application filed on November 1, 2002, Plaintiff alleges that he has been disabled since July 16, 2002, due to uncontrollable high blood pressure, severe coronary artery disease, left ventricular dysfunction, recurrent transient ischemic attacks, sleep apnea, problems with his back, fatigue, and shortness of breath (Tr. 16, 115). The state agency denied his claim on January 6, 2003 (Tr. 376-385). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

The case was heard before an ALJ on June 19, 2003 (Tr. 54-81). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at this hearing (Tr. 54-81). The ALJ concluded in a decision dated July 16, 2003, that despite Plaintiff's impairments, he was capable of making a vocational adjustment to a significant number of jobs in the national economy (Tr. 21, Finding No. 11). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act at any time through the date of his decision (Tr. 21, Finding No. 12).

Plaintiff requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied Plaintiff's request, making the ALJ's July 16, 2003 decision the Commissioner's final decision for purposes of this judicial review.

### B. Factual Background

Plaintiff was born on October 5, 1953 and was forty-nine years old at the time of the filing of his most recent application for benefits and at the time of the ALJ's decision (Tr. 57, 311-315). Plaintiff completed nine grades of formal schooling; he does not hold a GED (Tr. 59). He worked in the steel mills for approximately thirty years (Tr. 59-61). He left this employment on July 16, 2001, when he began to experience disorientation and other physical symptoms due to transient ischemic attacks (Tr. 56, 61). Plaintiff has performed no work activity since that time (Tr. 61). The VE testified that Plaintiff did not have any readily transferrable skills; those he had were "very specific" to the steel industry (Tr. 75).

### C. Medical History

The medical evidence reflects that Plaintiff presented to the emergency room on July 16, 2001, with complaints of chest pain (Tr. 160). A neurologic exam was normal (Tr. 175-76). An echocardiographic report indicated that Plaintiff had non-hemodynamically significant aortic valve sclerosis with trace pulmonary and mitral regurgitation and a slight increase in septal thickness (Tr. 177). A myocardial perfusion scan showed a mild to moderate defect involving the inferoseptal and basal inferior wall with mild redistribution with normal wall motion (Tr. 178). Plaintiff experienced syncope with loss of

consciousness during a stress echocardiographic test, however, the syncope did not appear to be cardiac related (Tr. 179). A CT scan of the brain showed no change from a prior, recent CT that would explain Plaintiff's syncopal episodes (Tr. 181). An EEG was within normal limits, and a carotid doppler scan showed no finding to suggest narrowing of either extracranial carotid artery (Tr. 180). Chest x-rays showed no active disease (Tr. 183). Plaintiff was discharged on July 20, 2001, with the diagnoses of coronary artery disease, unstable angina, hypertension, syncope, obesity, and hyperlipidemia (Tr. 159).

In October of 2001, Plaintiff was diagnosed with mild obstructive sleep apnea syndrome (Tr. 373). This condition is successfully resolved through the use of a continuous positive airway pressure (CPAP) machine (Tr. 370).

On December of 2001, Plaintiff presented to the hospital with complaints of chest pain (Tr. 220-72). An EKG showed a normal sinus rhythm and chest x-rays were normal (Tr. 236, 268). The attending physician opined that Plaintiff's chest pain was probably not cardiac in origin (Tr. 236). Plaintiff was discharged two days later with instructions to follow up with his family physician, Norman J. Frey, III, D.O. (Tr. 220-72).

Plaintiff underwent a pulmonary function study on January 9, 2002 (Tr. 369). The study revealed no obstructive dysfunction and only a mild restrictive dysfunction (Tr. 369).

On October 11, 2002, Plaintiff underwent a CT scan of his abdomen due to uncontrolled hypertension (Tr. 351). The test revealed no evidence of an adrenal mass (Tr. 351).

On November 1, 2002, Dr. Frey referred Plaintiff to the Joslin Diabetes Center for evaluation and management of new-onset type 2 diabetes (Tr. 354-56). Wayne Evron, M.D., reported that Plaintiff's diabetes was currently under poor control on three Glucophage (Tr. 355). Dr. Evron recommended that Plaintiff attend diabetes classes to learn more about his disease and that he monitor his blood sugar level (Tr. 355). Dr. Evron changed Plaintiff's medication to Glucovance (Tr. 355). Plaintiff is not insulin dependent but suffers numbness and tingling in his feet and occasional blurred vision (Tr. 65-66,74).

On January 6, 2003, a state agency physician reviewed Plaintiff's medical records and completed a residual functional capacity assessment (Tr. 376-85). The physician opined that Plaintiff could perform medium work (Tr. 376-85).

An office note from the Joslin Diabetes Center, dated April 3, 2003, indicated that Plaintiff had improved his overall hemoglobin from 11.5 to 8.3, but was still not at goal (Tr. 393). Plaintiff was advised to continue to diet and exercise and to take Glucovance (Tr. 393). Plaintiff's hypertension was noted as being extremely hard to manage, however, his hyperlipidemia was much better on Lipitor (Tr. 393). Plaintiff's neuropathy was

less symptomatic and he reported no unusual fatigue, headaches or blurred vision (Tr. 393).

Plaintiff testified that he takes diuretics which require him to use a bathroom frequently throughout the day (Tr. 63-64). He alleged general fatigue (Tr. 71). He indicated that he is able to sit for forty minutes, walk for up to three hours on a good day and lift twenty pounds (Tr. 67,71).

**C.   ALJ's Decision**

The ALJ found that the Plaintiff has the following "severe" impairments: coronary artery disease, hypertension and diabetes mellitus (Tr. 17, 20, Finding No. 3). The ALJ determined that Plaintiff's sleep apnea was not "severe." (Tr. 17, 20, Finding No. 3). The "severe" impairments are not severe enough, however, to meet or medically equal a listed impairment (Tr. 17, Finding No. 3).

Turning to the next sequential step in the disability determination process, the ALJ considered whether Plaintiff could return to his past relevant work, despite his impairments. In this regard, the VE opined that Plaintiff's skills were specific to his previous job and were not transferable to other types of work (Tr. 75). The ALJ determined that Plaintiff had the residual functional capacity to engage in a range of light work with the following limitations: no exposure to temperature or humidity extremes; no working around unprotected heights or

dangerous machinery; a sit/stand option, at will; simple, routine, repetitive tasks; very little spelling; no keen visual acuity; ready access to a bathroom (Tr. 20, Finding No. 7).  The ALJ posed these limitations to the VE, who testified that an individual with such restrictions would be capable of working as a television monitor (60,000 jobs), a ticket taker (145,000 jobs), a hand packer (75,000 jobs), a bench assembler of small parts (40,000 jobs), or an injection mold press operator (25,000 jobs) (Tr. 77).

Because the Plaintiff's past relevant work required a heavy level of exertion and the work requirements for that job exceeded his residual functional capacity, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 18, 20, Finding No. 8).

The ALJ found that although Plaintiff's limitations did not allow him to perform the full range of light work, he could perform the above-noted light, unskilled jobs (Tr. 21, Finding No. 11).  Accordingly, the ALJ determined that Plaintiff was not under a disability as defined in the Act (Tr. 21, Finding No. 12).

**D.  Standard of Review**

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence.  42

U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520, but in this case only step five is in dispute. At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[1] age, education, and past work experience, he can perform work that exists in significant numbers in the regional or national economy. 42 U.S.C. § 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Plaintiff raises two arguments. First, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because his residual functional capacity assessment was

---

[1] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

inconsistent with the definition of light work since it allowed for a sit/stand option at will.

> The regulations define "light work" as follows:
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.  Plaintiff complains that by placing a discretionary sit/stand option limitation on an individual's ability to do light work, the ALJ, in effect, transformed the exertional limitations into sedentary work.  Further, Plaintiff suggests that an individual who is unskilled and requires a sit/stand option at will would be precluded from performing most light and sedentary jobs.  Plaintiff references Social Security Ruling ("SSR") 83-12 and the case of Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003) in support of his argument.

Contrary to Plaintiff's argument, a sit/stand option does not automatically reduce his residual functional capacity to "sedentary."  SSR 83-12 addresses the issue of residual functional capacity assessments, such as Plaintiff's, which are

compatible with the performance of light work except that the person must alternate periods of sitting and standing.  We note that SSR 83-12 particularly addresses this issue in terms of workers with no transferable skills, such as Plaintiff.  In such cases, SSR 83-12 indicates that the ALJ should consult a VE to clarify the implications of the residual functional capacity for the occupational base.

Here, it appears that the ALJ followed the requirements of SSR 83-12.  The ALJ consulted the VE, presented the VE with a hypothetical individual with Plaintiff's vocational characteristics and residual functional capacity (Tr. 74-79).  We note that the ALJ posed a more restrictive residual functional capacity assessment than was warranted by the objective and clinical evidence of record in order to afford Plaintiff "every consideration when evaluating his claim for disability benefits." (Tr. 18).  The VE then testified that an individual of Plaintiff's age and educational background, with no transferable skills, and with Plaintiff's residual functional capacity would be capable of performing over 250,000 jobs in the national economy (Tr. 77).

With regard to the Boone case, Plaintiff argues that the case mandates a finding that, as an unskilled individual who requires a sit/stand option at will, Plaintiff would not be able to perform any competitive work in the national economy.  In our

view, Boone does not support Plaintiff's argument. The court in Boone merely reiterated the requirement of SSR 83-12 that an ALJ obtain additional evidence concerning the erosion of the occupational base in cases of unskilled workers with a residual functional capacity for light work with a sit/stand option. Boone, 353 F.3d at 209-212.

Further, the circumstances in Boone differ significantly from those presented here. In Boone, the court found that the VE's testimony did not provide substantial evidence of a significant number of jobs in the national economy that Boone could perform because (1) the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), (2) the VE equivocated in his testimony, and (3) neither the VE nor the ALJ in his opinion acknowledged the conflict between the VE's testimony and the DOT or explained why the VE's testimony should be relied on despite the conflict. Id. at 208. Here, the VE's testimony was consistent with the DOT, except with regard to one job -- the DOT identifies the occupation of hand packer as being performed at the medium exertional level. DOT 920.587-018. There is no conflict, however, with regard to the other jobs identified by the VE: television monitor, ticket taker, bench assembler, and injection press molder. Further, there was no hesitation by the VE in identifying the relevant jobs that the hypothetical individual would be able to perform in this case

(Tr. 76-79). In our view, substantial evidence supports the ALJ's finding that Plaintiff would be capable of making a vocational adjustment to a significant number of jobs in the national economy.

Plaintiff's second argument is that he should have been found disabled under the medical-vocational guidelines ("grids") as of his fiftieth birthday. We agree with the Commissioner that although the regulations state that the age categories will not be applied mechanically in a borderline situation, 20 C.F.R. § 404.1563(b), this was not a borderline situation. The ALJ reached his decision over two and one-half months before Plaintiff turned fifty on October 5, 2003. Moreover, even if Plaintiff had already turned fifty at the time of the ALJ's decision, it appears Plaintiff would not have been considered disabled under the grids. Under grid rule 202.11, an individual who can perform light work, is closely approaching advanced age, has limited or less education, and who has no transferable skills is considered "not disabled." In our view, substantial evidence supports the ALJ's finding that Plaintiff was not disabled under the medical-vocational guidelines (Tr. 21, Finding No. 11).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; <u>Edelman v. Commissioner of Social Sec.</u>, 83 F.3d 68, 70 (3d Cir. 1996). In

the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

                                      Respectfully submitted,

                                      <u>s/ Amy Reynolds Hay</u>
                                      AMY REYNOLDS HAY
                                      United States Magistrate Judge

Dated: 22 July, 2005.

cc:   The Honorable Joy Flowers Conti
      United States District Judge

      William J. Remaley, Esquire
      Berger & Green
      5850 Ellsworth Avenue, Suite 400
      Pittsburgh, PA 15232

      Rebecca Ross Haywood
      Assistant United States Attorney
      United States Attorney's Office
      700 Grant Street
      Suite 400
      Pittsburgh, PA 15219